[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON THE MOTION OF THE HOME STORE, INC.TO STRIKE THE DEFENDANTS' APPORTIONMENT COMPLAINT
The apportionment complaint that has been filed by the named defendants in this case against The Home Store, Inc. (Home Store), pursuant to § 52-102b of the General Statutes, alleges that the apportionment defendant is a manufacturer and seller of modular homes and is engaged in the business of selling and delivering modular homes in this state, that the plaintiff, Charles Morris, was doing electrical work in the modular home which had been purchased by the defendants from the Home Store and that while it was under construction, he stepped on a loose stair tread, fell down the stairs and was injured, and that the Home Store was negligent because of its failure to warn potential contractors that the stair tread was loose. The Home Store has moved to strike the defendants' complaint on two grounds, first, that it states a cause of action for common law negligence which is barred by the exclusive remedy provision of the Product Liability Act (CPLA), and second, that the defendants cannot base a claim for apportionment under § 52-102b upon a theory that falls within the scope of the CPLA.
The apportionment plaintiffs argue in opposition to the motion that although the CPLA consolidates all products liability claims into a single form of action, it does not preclude the assertion of an independently pleaded common law CT Page 9919 cause of action that does not fall within its scope. See R. Adelman and M. Connors, "The Legal Framework of a Products Liability Case in Connecticut", 67 Conn. B.J. 355, 358-60 (1993). They also assert that their complaint lacks the essential elements of a cause of action under the statute because they have not alleged that the stairway was defective or not reasonably safe for ordinary use, but merely that the Home Store was negligent because it "failed to provide a warning or other safeguards to warn potential contractors that the top stair tread" was loose.
The legislative history of the CPLA unequivocally supports the proposition that the legislature "clearly intended to make our products liability act an exclusive remedy for claims falling within its scope." Winslow v. Lewis-Shepard, Inc.,212 Conn. 462, 471 (1989). As a result of the consolidation of all product liability claims into a single form of action "a plaintiff may not assert a cause of action against the seller of a product for harm caused by the product except within the framework of the CPLA." Lamontagne v. E. I. DuPont de Nemours Co., 41 F.3d 846, 855 (2nd Cir. 1994).
The CPLA created a consolidated cause of action for all product liability claims, and accordingly, "an action alleging harm from a product due to negligence, for example, may not be pleaded as a separate common law claim but may only be asserted as a part of the CPLA." Lamontagne v. E. I. Du Pontde Nemours Co., 834 F. Sup. 576, 587 (D.Conn. 1993). The consolidated cause of action created by the statute means that all product liability claims are governed by a uniform procedure, a uniform set of remedies, a separate statute of limitations, as well as by the principle of "pure" comparative responsibility with respect to the recovery of damages in a product liability action based on negligence, instead of the "modified" form of comparative negligence that applies in common law negligence actions under § 52-572h(a) of the General Statutes. Id. 587-88.
Although a common law action sounding in negligence and based on factual allegations that are not within the scope of the CPLA remains viable, it is also a theory that may, by statutory definition, form the basis of a "product liability claim" under § 52-572m(b) of the General Statutes; HobokenWood Flooring Corp. v. Torrington Supply Co.,42 Conn. Sup. 153, 155 (1991); and the same subsection of the statute also CT Page 9920 provides that the "breach or failure to discharge a duty to warn or instruct, whether negligent or innocent" is expressly included within the statutory definition of a claim which falls within the ambit of the CPLA. The standard for failure to warn in products liability cases is similar to the negligence standard, "and many courts and commentators have concluded that there is no difference between failure to warn actions based on negligence principles and failure to warn actions based on strict products liability." Note, "New Jersey Advances the State of the Art in Products Liability", 15 Conn. L. Rev. 661, 671 (1983).
The statutory definition of a "product liability claim" and the "characterization of the types of conduct or activity enumerated in General Statutes § 52-572m(b) must be broadly construed in light of [its] principal purpose [which] is to protect people from harm caused by defective and hazardous products [and it is therefore] necessary that the statute be read to reach all conduct which affects the safety of a product prior to its entry into the stream of commerce [particularly] in light of the clear mandate of the product liability statute to provide the exclusive remedy in this area." Rodia v. Tesco Corp., 11 Conn. App. 391, 396 (1987). Moreover, where the complaint itself alleges, or it is otherwise undisputed, that the defendant is a "product seller" within the meaning of § 52-572m(a) of the CPLA, the complaint sufficiently states a cause of action under the statute. Id. 397.
The question of whether modular or prefabricated homes are "products" under the CPLA was not raised by the apportionment plaintiffs, but the Home Store has briefed that issue, and although there have been no definitive appellate decisions on the subject in this state, it cites Coburn v. Lenox Homes,Inc., 173 Conn. 567 (1977), a case decided before the CPLA was enacted in 1979, in which the Supreme Court rejected the plaintiff's claim that strict liability in tort could be imposed on the builder-vendor of an individual home, but also indicated that such liability might properly be imposed in a "mass marketing situation" or where a house was "the product of a mass marketing scheme . . ." Id. 572-73. More recently, the United States District Court, after noting that our Supreme Court has consistently followed the rule of strict liability set forth in Restatement (Second) of Torts § 402A (1965), observed that the official comments to § 402A CT Page 9921 establish that the doctrine of strict tort liability "was principally intended to impose a special liability on those who market defective products to the general public in a mass-distribution context . . ." . K-MART Corp. v. Midcon RealtyGroup of Connecticut, Ltd., 489 F. Sup. 813, 816, 818 (D.Conn. 1980).
The Supreme Court of Hawaii, which has essentially also adopted § 402A of the Restatement (Second) of Torts, has stated that "a prefabricated building that must be assembled is a product where the seller-manufacturer may be found strictly liable for injuries caused by a defective component part." Kaneko v. Hilo Coast Processing, 654 P.2d 343, 350
(Haw. 1982). The Court held that its broad definition of a "product" in this context was consistent with the public policy reasons underlying product liability laws because it would provide maximum protection to persons injured from defects in products, it would impose liability on the manufacturer-seller who is best able to distribute the risk of injury as a cost of doing business, and it would also serve as an incentive to the manufacturer to guard against such defects in the future. Id.
For the foregoing reasons, the court finds that the modular home sold to the apportionment plaintiffs was a "product" within the meaning of the CPLA and would be so construed by our Appellate Court because of the broad construction it gave to the statutory definitions for the reasons of public policy that it stated in Rodia v. TescoCorp., supra. The court also finds that the plaintiffs' apportionment complaint states a cause of action for common law negligence which is barred by the exclusive remedy provision of the CPLA.
It should also be noted that even if that complaint had been properly brought as a product liability claim under the statute based on a common law negligence theory, the apportionment defendant would be liable, if at all, only under the CPLA because "[a] product liability claim is exclusively controlled by [that statute] and [it] can never be a claim arising under § 52-572h", because § 52-102b which governs apportionment complaints permits them to be filed only in negligence actions. See Paul v. McPhee ElectricalContractors, 46 Conn. App. 18, 21 (1997). CT Page 9922
Accordingly, the motion of the apportionment defendant, The Home Store, Inc., to strike the apportionment complaint of the defendants-apportionment plaintiffs, is granted.
Harry Hammer Judge Trial Referee